UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
00-CV-1639 (JMR/FLN)

| | | |
|---|---|---|
| Datascope Corporation | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| Vascular Solutions, Inc. | ) | |

In this case, the Court must first define a term in a patent's claims, pursuant to Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995). The Court, thereafter, considers cross motions for summary judgment.

The claim is defined below. And, using this definition, and finding the patent valid, the Court concludes that defendant has infringed plaintiff's patent. Plaintiff's motion for partial summary judgment is therefore granted and defendant's motion is denied.

I. Background

Modern vascular medicine, involving surgical treatment of the circulatory system, frequently requires punctures of blood vessels in order to insert coronary catheters. Bleeding from arterial puncture sites is a critical problem. Both parties make and sell medical devices designed to aid the sealing of arterial punctures after femoral arterial catheterization.

Plaintiff, Datascope Corporation, owns United States Patent 5,725,498 ("the '498 patent"), which defines a unique method of sealing arterial punctures. It manufactures and sells its

AUG 1 9 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

VasoSeal® Vascular Hemostasis Device ("VasoSeal"). VasoSeal incorporates the '498 patent's teachings, and has been marketed in the United States for approximately five years.

Defendant, Vascular Solutions, Inc., manufactures and sells a device called the Vascular Solution Duett™ (the "Duett"). The Duett uses an inflatable balloon catheter which is inserted into an artery. After insertion, the balloon is inflated to temporarily seal the puncture from the inside. Once the balloon is inflated, a liquid mixture of thrombin and collagen is applied to the subcutaneous tissue outside the artery, which facilitates and accelerates blood clotting. After a puncture is permanently closed, the balloon is deflated and removed.

Datascope claims Vascular's Duett infringes its '498 patent. Vascular denies the allegations, and has filed a counterclaim, seeking a declaration that Datascope's '498 patent is invalid and unenforceable.

II. <u>The Definition of "Hemostatic Material"</u>

The parties agree the only claims at issue in this lawsuit are the '498 patent's Claims 1 and 4.

Claim 1 provides:

> 1. A method for sealing a puncture in a blood vessel separated from the skin of a patient by a layer of tissue, said layer of tissue including a tissue channel communicating between said puncture and the patient's skin, said method comprising the steps of:
>
> Inserting a hemostatic material into said tissue channel, and

> Advancing said hemostatic material through said tissue channel to a position adjacent the outside wall of said blood vessel in a manner such that said hemostatic material is never freely exposed within the lumen of the blood vessel during said advancement.

Claim 4 provides:

> 2. The method as claimed in Claim 1 wherein said hemostatic material is comprised of collagen.

The parties further agree their claims rest upon the Court's claim construction of "hemostatic material" -- which is the only disputed term.

II. Discussion

Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Anderson, at 248-49; see also Hartnagel v. Norman, 953 F.2d 394, 395-96 (8th Cir. 1992). If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See Celotex, 477 U.S. at 322.

When considering a claim of patent infringement, a court must consider two issues: (1) the meaning and scope of the asserted claims; and (2) whether the asserted claims encompass the accused structure. See Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995).

1. Claim Interpretation

Issues of claim construction are resolved as a question of law. See Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). When defining a claim, a court looks first to the intrinsic evidence of the record -- the claim, the specification, and, if in evidence, the prosecution history. See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). If the claim remains unclear, the court may then consider extrinsic evidence. See Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1216 (Fed. Cir. 1995). Absent an express intent to bestow a novel meaning, claim terms are given their ordinary meaning. Optical Disc Corp. v. Del Mar Avionics, 208 F.3d 1324, 1334 (Fed. Cir. 2000).

In this case, as part of the Markman claim definition process, the parties each offered a proposed definition of "hemostatic material." After receiving the parties' submissions and hearing oral argument, the Court defines hemostatic material as:

> "Hemostatic material" is a substance which can be introduced into the human body where it will be accepted without triggering a rejection reaction. Over time, the body absorbs this material.

According to plaintiff, "hemostatic material" cannot consist of material which is not bioabsorbable. Plaintiff bases this contention on the fact that the '498 patent only describes hemostatic material as resorbable substances. Defendant argues the definition of "hemostatic material" should not include resorbability for several reasons. First, defendant argues that the '498 patent's specifications nowhere clearly and explicitly limit hemostatic material to resorbable material. Second, defendant objects to plaintiff reading the embodiments of the specification into the claims. Finally, defendant asserts that whether the hemostatic material is resorbable is irrelevant to the method claimed by the '498 patent.

The Court, as evidenced by its definition of "hemostatic material," agrees with plaintiff. The '498 patent's specification explicitly describes the invention as using "collagen . . . or some other resorbable material" to seal an artery. When construing construction claims, the Court is permitted, and in fact required, to review the intrinsic evidence of the record, which includes the specification. See Vitronics Corp. v. Conceptronic, Inc. 90 F.3d 1576, 1582 (Fed. Cir. 1996).

Defendant next argues that "hemostatic material" must be limited to a solid material. According to the defendant, hemostatic material cannot encompass liquids. If the defendant is correct, the limitation it seeks to insert would necessarily

eliminate its product and method. This is because the defendant's product uses a liquid substance, which would exclude its infringement of the '498 patent. As is clear from the Court's definition, the Court does not agree.

The '498 patent has no claim language which either explicitly or implicitly limits hemostatic material to solid materials. To the contrary, the '498 patent specification language explicitly describes a continuum of materials which may range from "a liquid or . . . a viscous paste-like consistency." Col.9, ll. 54-58. The specification even identifies an entirely different embodiment, using a closed balloon composed of a collagen membrane partially filled with a collagen substance and saline solution, and specifies that the inflation fluid should be resorbable.[1]

Each of defendant's arguments fail. Thus, the Court, applying Markman, defines "hemostatic material" as set forth above.

The second analytic step, the determination of infringement, is a question of fact. Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999). But where the parties do not dispute any relevant facts about the accused device, merely

---

[1]Defendant suggests, however, that this portion of the specification violates the enablement requirement for failure to describe any act that would permit the application of a liquid material without entering the lumen of the blood vessel. Because the Court finds this argument is more appropriately characterized as an invalidity argument rather than an argument concerning claim construction, it will be dealt with below in the context of defendant's other invalidity arguments.

asserting two different meanings for the patent claim, the second step of the infringement analysis is amenable to summary judgment. See Toro Co. v. John Deere Co., 143 F. Supp.2d 1122, 1127 (D. Minn. 2001), citing Athletic Alternatives, Inc. v. Prince Mfg. Inc., 73 F.3d 1573, 1578 (Fed. Cir. 1996).

Here, the only disputed question is whether defendant's Duett infringes Claims 1 and 4 of the '498 patent. Further, the parties' pleadings indicate that the question of infringement rests primarily on the Court's claim definition. When the parties do not dispute any relevant facts, but instead assert different meaning to the claims, then the question of infringement "collapses" into one of claim construction. See Toro Co. v. John Deere Co., 143 F. Supp.2d 1122, 1127 (D. Minn. 2001). Therefore, the question of infringement in this case is appropriate for summary disposition.

III. Infringement

And so, the Court turns to infringement analysis. The Court will find a patent has been infringed when "the accused device contains every limitation in the asserted claim." See Elkay Mfg. Co. v. Ebco Mfg. Co., 192 F.3d 973, 980 (Fed. Cir. 1999).

Claim 1 of the '498 patent is limited to a method in which "hemostatic material is never freely exposed within the blood vessel." The defendant denies that its device infringes, because the Duett balloon actually checks arterial bleeding. Therefore, according to defendant, the balloon should be considered the

Duett's "hemostatic material," and since the balloon is exposed in the blood lumen vessel, its product does not fall under the language in Claim 1. Defendant's argument fails.

It fails, first, because a necessary subchord of this argument is that "hemostatic material" must be construed only as a collagen plug. The Court's claim definition has already rejected this position.

The argument fails for another reason. The Duett's balloon is not resorbable, and it is removed prior to the completion of the procedure. It merely functions as a backstop -- a tool or equipment in the procedure, used to help assure that the Duett's actual hemostatic material (the procoagulant) does not enter the lumen while being applied to the outside of the artery. As such, the Duett's balloon cannot be considered "hemostatic material" at all. While the balloon may temporarily block the artery from bleeding, it does not achieve permanent hemostatis, nor is it resorbable at any time.

The Duett performs the same function, in the same way, with the same results, as is taught in the '498 patent. The Duett incorporates all of the following: (1) a method for sealing a puncture in a blood vessel such as that created by a catheterization procedure; (2) hemostatic material is inserted into the tissue channel between the layer of skin and femoral artery, but does not enter into the lumen; (3) the hemostatic material

involved is resorbable; (4) the hemostatic material even includes collagen; and (5) the hemostatic material is advanced to the puncture site. Every limitation in Claim 1, as well as Claim 4, is present. Consequently, the Court finds defendant's Duett literally infringes plaintiff's patent.

2. Invalidity

A. Enablement requirement

Defendant argues that Claim 1 is actually a step-plus-function claim, as defined by 35 U.S.C. § 112, ¶ 6, and as such, must extend only as far as the method disclosed in the specification. According to defendant, Claim 1 cannot be extended to liquid hemostatic materials, such as are used in the Duett. This argument is premised on defendant's assertion that the '498 patent's specification identifies no manner by which a liquid hemostatic material can be advanced to a point adjacent the outside vessel wall and prevent it from being freely exposed within the lumen. Defendant next argues that the portion of the specification describing a continuum of materials that can range from "a liquid or . . . a viscous paste-like consistency" violates § 112's requirement by failing to describe any act that would enable the application of a liquid material to not enter the lumen of the blood vessel. This, defendant concludes, violates § 112's enablement requirement. The defendant is wrong.

A patent subject to § 112, ¶6, must contain a description which enables one skilled in the art to make and use the claimed inventions in order to satisfy the enablement requirement. United States v. Telectronics, Inc., 857 F.2d 778, 785 (Fed. Cir. 1988). This requirement is met if the description enables any mode of making and using the claimed invention. See Engel Indus., Inc. v. Lockformer Co., 946 F.2d 923, 925 (Fed. Cir. 1991). "A patent may be enabling even though some experimentation is necessary, the amount of experimentation, however, must not be unduly extensive." Telectronics, 857 F.2d at 785.

The Federal Circuit has stated that § 112, ¶6 is only implicated when "means *plus function* without definite structure are present" or "steps *plus function* without acts are present." O.I. Corp. v. Tekmar Co., Inc., 115 F.3d 1576, 1583 (Fed. Cir. 1997) (emphasis in original). The Federal Circuit has made clear, however, that "[m]erely claiming a step by itself, or a series of steps, without recital of a function does not trigger the application of § 112, ¶6." Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1028 (Fed. Cir. 2002). Further, the "phrase 'steps of' colloquially signals the introduction of specific acts, rather than functions, and therefore does not presumptively invoke application of § 112, ¶ 6." Seal-Flex, Inc. v. Athletic Track and Court Constr., 172 F.3d 836, 849 (Fed. Cir. 1999)(Rader, J., concurring). In contrast, use of the phrase

"steps for" generally signals the recitation of a function, and therefore raises a presumption that § 112, ¶ 6 applies. Id.

After applying the Federal Circuit's teachings, the Court concludes Claim 1 is not subject to §112, ¶6. The '498 patent's claim recites "steps of" language, not "step for" language. See, e.g. Epcon Gas Systems, Inc. v. Bauer Compressors, Inc., 279 F.3d 1022 (Fed. Cir. 2002) (holding where the claim included no words such as "step for," it was not subject to § 112, ¶6). Further, Claim 1 recites specific acts, such as "advancing said hemostatic material through said tissue channel . . . ." and "inserting a hemostatic material into said tissue channel." Defendant stoutly maintains that these are functions, but the Court disagrees. The words describe acts. The acts promote the specified function of sealing a puncture in a blood vessel. This determination precludes implicating § 112, ¶6, in the analysis of Claim 1, which requires that "steps *plus function* without acts" be present. O.I. Corp., 115 F.3d at 1583 (emphasis in original).

Accordingly, the Court concludes the '498 patent is a method claim, and is not subject to the § 112, ¶6's enablement requirement. Defendant's assertion that the '498 patent is invalid for failing to comply with the statutory enablement requirement fails.

B. Best Mode

Defendant next argues the '498 patent should be invalidated because the inventors failed to disclose the best mode. Defendant argues the patent's specification did not reference NOVACOL®, plaintiff's FDA-approved collagen pad product. Defendant's argument is premised on section 112 of the Patent Act, which requires a patent specification to disclose the best mode for practicing the invention. Section 112 provides:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it . . . and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112.

Patents, of course, are presumed valid. As a result, the party challenging validity for failure to disclose the best mode must prove by clear and convincing evidence that the inventors of the '498 patent "both knew of and concealed a better mode of carrying out the claimed invention than was set forth in the specification." Transco Products Inc. v. Performance Contracting, Inc., 38 F.3d 551, 560 (Fed. Cir. 1994).

Determining whether the inventor has complied with the best mode requirement involves a two-step inquiry. First, the fact-finder must determine whether, at the time of the application, the inventor actually had a best mode of practicing the invention; this is a subjective inquiry. Chemcast Corp. v. Arco Indus. Corp., 913

F.2d 923, 928 (Fed. Cir. 1990). Second, the fact-finder asks whether the disclosure is adequate; that is, whether the best mode was disclosed in sufficient detail to enable one skilled in the art to practice it. Id. "The extent of information that an inventor must disclose depends on the scope of the claimed invention." Eli Lilly and Co. v. Barr Lab. Inc., 58 U.S.P.Q.2d 1869 (Fed. Cir. 2001).

An inventor is, however, only required to disclose that which is essential for carrying out the best mode of the invention; the requirement does not extend to production or routine details. Id. However, if an invention involves a novel subject matter, then an inventor must disclose a method for obtaining that subject matter. Id. (citing Applied Med. Resources Corp v. U.S. Surgical Corp., 147 F.3d 1374, 1377 (Fed. Cir. 1998)).

At the time of the patent -- in 1990 -- plaintiff's fibrous collagen product was commercially available; it was not a novel or limited access compound. The defendant has wholly failed to show that Datascope used NOVACOL®, its own brand of fibrous collagen, for any reason other than convenience. Defendant offers no evidence in support of its summary judgment motion suggesting that plaintiff tested other types of collagen products, or that plaintiff used NOVACOL® after concluding it performed better than other fibrous collagen products. There is simply no evidence, let alone clear and convincing evidence, that Datascope concealed a

preferred method or had determined a preferred method based on objective data or testing.

Rather than establishing a best mode violation, defendant's quarrel merely describes a production detail. Datascope's decision to use NOVACOL® was based on considerations of convenience and cost. Those details are excluded from any requirement of disclosure. See Wahl Instruments v. Acvious, Inc., 950 F.2d 1575, 1581-82 (Fed. Cir. 1991) (holding that the choice of molding was a manufacturing detail, chosen due to cost considerations, and as such, was not a violation of the best mode requirement). Because defendant has failed to produce any evidence to support its contention that Datascope's reasons for utilizing NOVACOL® were related to the intrinsic quality of that brand's collagen pad, the best mode requirement for disclosure is not invoked. Defendant has not met its burden of marshaling clear and convincing evidence to show that a preferred method was concealed. As such, plaintiff had no obligation to disclose NOVACAL® in its '498 patent; whether or not NOVACAL® was disclosed is of no significance to the patent's validity.

The Court's determination is in accord with Rule 56(e) of the Federal Rules of Civil Procedure, as it relates to plaintiff's motion for summary judgment. Defendant may not defend against a properly supported motion for summary judgment by reliance on its pleadings. It must come forward with admissible evidence showing

a genuine issue which can be presented to a trier of fact. In the absence of such evidence, and the Court finds none is present here, defendant's best mode invalidity claim fails.

C. Anticipation by Prior Art

Defendant next argues the '498 claims were anticipated by prior art. Defendant claims an article by Takayasu, et al., A New Hemostatic Procedure for Percutaneous Transhepatic Portal Vein Catheterization, appearing in the Japanese Journal of Clinical Oncology, 18:227-230 (1998), anticipated the patent. Defendant also implies that plaintiff committed inequitable conduct in failing to cite the Takayasu article during prosecution of the '498 patent.

It is well established that, in order to anticipate a patent claim under 35 U.S.C. § 102, a prior art reference must contain each and every element recited in the claim. See In re Robertson, 169 F.3d 743, 745 (Fed. Cir. 1999). If it does not set forth each element expressly, a reference may still anticipate if that element is inherent in its disclosure. Id. Inherency may not be established by probabilities or possibilities. Finnigan Corp. v. U.S. Int'l Trade Comm'n, 180 F.3d 1354, 1365 (Fed. Cir. 1999). The fact that a certain thing might result from a given set of circumstances is insufficient to establish anticipation. See Robertson, 169 F.3d at 745 (citing Continental Can Co. v. Monsanto Co., 948 F.2d 1264, 1268 (Fed. Cir. 1991)).

After careful review of the record, the Court finds the '498 patent was not anticipated by Takayasu's reference, nor did plaintiff commit inequitable conduct by failing to cite to the article.[2] Apparently, defendant believes the Takayasu procedure anticipates inherently, since the described procedure does not set forth each and every element recited in the claim. See In re Robertson, 169 F.3d 743, 745 (Fed. Cir. 1999). Defendant points to a particular part of Takayasu's language to support its claim. It argues the article's reference to the use of X-ray monitoring is the key. According to defendant, the "apparent purpose of the X-ray monitoring [in the Takayasu procedure] is to assure that as the gelfoam stick [the sealing mechanism] is advanced, it does not enter the portal vein," and thus, it serves the same purpose as the monitoring referenced in Claim 1 of the '498 patent, where it states that the "hemostatic material is never freely exposed within the lumen of the blood vessel." [Def's Memo in Support of Motion for Summary Judgment, p.12-13]. Defendant's assertion concerning the "apparent" purpose of the Takayasu x-ray monitoring amounts to nothing more than speculation. As stated above, mere possibilities are insufficient to establish prior art anticipation. See Finnigan, 180 F.3d at 1365.

---

[2]As an initial, but not at all trivial, matter, Takayasu does not even refer to sealing a puncture in a blood vessel. It instead refers to plugging a puncture hole in the liver, disclosing a technique and device designed to close such holes. Takayasu does not speak of sealing vascular punctures.

Defendant next -- and uncharmingly -- incants the talismanic words of misconduct. The defendant claims plaintiff intentionally concealed the Takayasu reference from the patent office. Inequitable conduct, of course, includes either affirmative misrepresentation or a failure to disclose material information, coupled with an intent to deceive. Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995).

In determining whether inequitable conduct occurred, the party accusing the other of inequitable conduct must show by clear and convincing evidence that (1) the alleged nondisclosure occurred; (2) that the nondisclosure was material; and (3) that the patent applicant acted with the intent to deceive the PTO. Li Second Family Ltd Partnership v. Toshiba Corp., 231 F.3d 1373, 1378 (Fed. Cir. 2000). Thus, the threshold inquiry is materiality and intent. Id. Once this threshold is met, the court must balance materiality and intent to determine whether equity warrants the conclusion that inequitable conduct occurred. Id.

A reference is considered material when there is a substantial likelihood that a reasonable examiner would consider the information important in deciding whether to allow an application to issue. Molins, 48 F.3d at 1179. Defendant notes that plaintiff listed the Takayasu article in a 35 U.S.C. § 282 notice[3] filed in

---

[3]Section 282 requires:
In actions involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in

connection in a different and previous lawsuit in Quinton Instrument Co. v. Datascope Corp., Civ. No. 3:96-160 (E.D. Va. 1996). Defendant proposes that this alone demonstrates plaintiff's belief that Takayasu was material, thus establishing materiality in this lawsuit.

The Court is disinclined to accept defendant's point of view. It is pertinent to recognize that the Quinton lawsuit did not involve the '498 patent. Regardless, the Court concludes defendant has failed to submit sufficient evidence from which it can conclude that the Takayasu reference is material. As noted, the article details a procedure for closing a liver puncture, not for sealing a blood vessel puncture. Beyond this, the Takayasu reference is cumulative to other cited references. During the prosecution of the '498 patent, several references were cited and specifically addressed to the Patent Office. The cited references presented information on mechanisms that sealed punctures in blood vessels,

---

> writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit or, . . . as showing the state of the art, . . . . In the absence of such notice proof of the said matters may not be made at the trial except on such terms as the court requires.

The objective of a section 282 notice is to prevent unfair surprise by the production of unprepared surprise of reliance on prior art references. See Eaton Corp. v. Appliance Valves Corp., 790 F.2d 874, 879 (Fed. Cir. 1986).

as opposed to the Takayasu reference, and its focus on the non-vascular punctured liver. All of these factors lead the Court to conclude that the reference was not material.

The defendant has wholly failed to submit sufficient evidence from which a reasonable jury could find there has been an intent to deceive. The attorneys that represented Datascope in the Quinton litigation did not represent Datascope in its prosecution of the '498 patent. The counsel who prosecuted the '498 patent was a different attorney, and it has not been shown that he knew of the section 282 notice or the Takayasu reference. Notwithstanding this absence of proof, the firm which advanced the '498 patent disclosed the ongoing Quinton litigation to the Patent Office. If plaintiff were attempting to conceal the Takayasu reference, it certainly would not have revealed the Quinton litigation which listed the Takayasu reference. The defendant has not put forth a triable case from which a finder of fact could infer an intent to deceive.

The defense asserts that a showing that a reference was material and the applicant "knew or should have known of that materiality is sufficient to establish intent to mislead." Def.'s Reply Memo, p.4 (citing Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1256-57 (Fed. Cir. 1997)). However, a recent Federal Circuit case stated that the "omission must be made with the specific intent to mislead, not merely from carelessness in the performance of a duty." Speedplay, Inc. v.

Bebop, Inc., 211 F.3d 1245 (Fed. Cir. 2000). At best, Datascope may have been careless in having its litigation counsel (for a separate lawsuit, which did not involve the same patent) submit the reference in a section 282 notice, while the prosecution counsel, after concluding that it was not material, did not submit the reference. But such conduct hardly rises to the level of intent to deceive.

The defendant's proffered evidence simply does not support an inference of deceptive intent merely from the rather common-place occurrence of separate litigation counsel failing to communicate and coordinate fully with a separate patent prosecution counsel (on a different patent) about each detail of the lawsuit or patent prosecution. Defendant has not submitted enough evidence to infer an intent to mislead. Even if the threshold requirement of intent had been met here, the Court easily concludes that no inequitable conduct occurred here.

D. Sydney Wolvek as a Co-Inventor

Defendant next contends that Sid Wolvek is improperly named as an inventor. According to defendant, Mr. Wolvek has not made a contribution to the invention, primarily because of the time-gap between Wolvek's work and that of the other inventors.

Joint inventors may be included together on the same patent pursuant to 35 U.S.C. § 116. The Section provides, that "When an invention is made by two or more persons jointly, they shall apply

for patent and each sign the application and make the required oath, except as otherwise provided in this title." As in most situations where an issued patent is under attack, there is a presumption that the inventors named on the patent are correct, so misjoinder must be established by clear and convincing evidence. See Hess v. Advanced Cardiovascular Sys., Inc., 106 F.3d 976, 979-80 (Fed. Cir. 1997). Inventors need not work physically together or have contributed equally to the invention, but must simply contribute in some significant manner to the conception of the invention. See Fina Oil and Chemical Co. v. Ewen, 123 F.3d 1466 (Fed. Cir. 1997).

In this case, Wolvek did pioneering work in the area of arterial sealing methods. His work included the insertion of hemostatic material to the puncture site. He attempted to do so using various materials, both with and without balloons, and using solid and liquid hemostatic materials. Wolvek used collagen in some of his experiments, collagen which was supplied by Ernst Janzen and Datascope. Wolvek did the work at Lawrence Saper's request. Saper, in turn, directed Janzen's work. Janzen, under direction from Saper, and Gunter Ruttgers, ultimately developed the VasoSeal device.

The law recognizes that joint inventorship can occur when work is done under "common direction," or when one inventor sees another's report and builds upon that work, or hears another

inventor's suggestion at a meeting or otherwise. See Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co., Inc., 973 F.2d 911, 917 (Fed. Cir. 1992). However, inventors cannot be co-inventors if there has been no corroboration at all between them, or they are completely ignorant of the other for years after the invention. Id. Here, Wolvek and Janzen worked under the "common direction" of Saper, and communicated directly and indirectly, according to Janzen.

In fact, Janzen testifies that he could not separate his own work from Wolvek's previous work, because the arterial sealing project was a Datascope team effort. Defendant argues there was a three-year gap between the two inventors' work, and suggests this fact alone necessitates a conclusion of non-joint-inventorship. This argument is, of course, undermined by the Patent Act itself. The Act imposes no requirement that the work be simultaneous. See 35 U.S.C. § 116 (stating "inventors may apply for a patent even though . . . they did not physically work together or at the same time. . . .").

Due to the nature of Wolvek's pioneering work, it could just as easily be argued that it would have been improper to leave him off of the '498 patent, as defendant's argument that it was improper to include him as a co-inventor. Janzen testified that he worked with Wolvek when it came to technical matters, and Saper's testimony is that, but for Wolvek's work, there would never have

been an invention by Janzen. See Janzen Dep., at 65-66; Saper Dep. at 38-39.

Bearing in mind all of these considerations, the Court concludes defendant has failed to submit sufficient evidence to establish by clear and convincing evidence that Wolvek was improperly listed as a co-inventor.

III. Conclusion

Based on the foregoing, the Court finds that defendant's Duett infringes plaintiff's '498 patent. Accordingly, defendant's motion for summary judgment is denied. Plaintiff's motion for partial summary judgment is granted on all issues concerning liability. Based on the findings of fact, conclusions of law, all the files and records, and for the reasons stated above, IT IS ORDERED that:

1. Defendant's motion for summary judgment is denied.
2. Plaintiff's partial motion for summary judgment is granted.
3. The matter shall be set for trial on the issue of damages.

Dated: August 16, 2002

JAMES M. ROSENBAUM
United States Chief District Judge